F26QkorS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA
3
               v.                        13 CR 428 (PAE)
4                                        Sentence
   RAYMOND KORNEGAY
5
               Defendant
6  ------------------------------x

7                                        New York, N.Y.
                                         February 6, 2015
8                                        11:15 a.m.

9

   Before:
10
                    HON. PAUL E. ENGELMAYER
11                                       District Judge

12
                         APPEARANCES
13
   PREET BHARARA
14      United States Attorney for the
        Southern District of New York
15 BROOKE CUCINELLA
        Assistant United States Attorney
16
   SARAH KUNSTLER
17      Attorney for Defendant Kornegay

18

19

20

21

22

23

24

25

F26QkorS

1              (In open court; case called)

2              THE DEPUTY CLERK:  Government ready?

3              MS. CUCINELLA:  Brooke Cucinella on behalf of the

4    government standing in for Andrea Griswold.  Good morning.

5              THE COURT:  Good morning, Ms. Cucinella.

6              MS. KUNSTLER:  Good morning, your Honor.  Sarah

7    Kunstler for Mr. Kornegay.

8              THE COURT:  Good morning, Ms. Kunstler.

9              Good morning, Mr. Kornegay.

10             THE DEFENDANT:  Good morning, your Honor.

11             THE COURT:  I am going to begin by reviewing the

12   materials I've received in connection with sentencing.  Then

13   before proceeding any further, I want to take up the issues

14   presented in Mr. Kornegay's letter of January 14 which I

15   circulated to counsel.

16             We are here today to impose sentence in the case of

17   United States v. Raymond Kornegay.  On January 15 of last year,

18   Mr. Kornegay was convicted after a three-day trial of one count

19   of conspiracy to commit Hobbs Act robbery and of three

20   substantive counts of Hobbs Act robbery, each of which were

21   keyed to a particular robbery of a cell phone store.

22             In preparation for today's proceeding, I reviewed my

23   notes of the trial to refresh my memory.  I also reviewed the

24   presentence report dated October 31, 2014 including the

25   recommendation and addendum to that report.

F26QkorS

1          I've also received the following additional

2     submissions:  The defendant's very thoughtful and helpful

3     submission dated December 19, 2014, which in turn is

4     accompanied by an appendix of exhibits.  Second, a letter from

5     Mr. Kornegay raising questions about his representation which I

6     circulated to counsel as an attachment to an order I issued on

7     January 21, 2015.  And the government's submission which was

8     also very thoughtful and helpful dated January 20, 2015.

9          Have the parties received each of these submissions?

10          MS. CUCINELLA:  Yes, your Honor.

11          MS. KUNSTLER:  Yes, your Honor.

12          THE COURT:  Have any additional submissions been made

13     in connection with sentencing?

14          MS. CUCINELLA:  No, your Honor.

15          MS. KUNSTLER:  No, your Honor.

16          THE COURT:  Before proceeding any further, I just want

17     to take up the letter from Mr. Kornegay again dated January 14.

18     I took Mr. Kornegay to again be raising the question of his

19     wanting to receive the document that he believes contains some

20     waiver by him going back to 2013, which a series of counsel

21     have now represented they've tried to find or identify and have

22     been unable to do so.

23          Ms. Kunstler, have you had an opportunity to discuss

24     with your client the letter that Mr. Kornegay wrote to the

25     Court?

F26QkorS

1          MS. KUNSTLER:  Yes, your Honor.

2          THE COURT:  What is the status of your discussions

3     with him about that?

4          MS. KUNSTLER:  Your Honor, Mr. Kornegay's position

5     remains the same.  It is a little bit -- I'm a little bit

6     uncomfortable -- it's hard for me to -- I'd prefer for

7     Mr. Kornegay to respond to it, actually, because it's --

8          THE COURT:  Let me try it this way.

9          MS. KUNSTLER:  OK.

10         THE COURT:  I need to know whether it is appropriate

11    or not to go ahead with sentencing today, and I need to

12    understand the biggest picture of whether or not Mr. Kornegay

13    is comfortable with your representing him in connection with

14    sentencing.  Without disclosing any attorney/client

15    communications, can you give me an insight as to the state of

16    the attorney/client relationship?

17         MS. KUNSTLER:  Could you give me one moment, your

18    Honor?

19         THE COURT:  Of course.

20         (Pause).

21         MS. KUNSTLER:  Mr. Kornegay would prefer not to go

22    ahead with sentence.

23         THE COURT:  Is there anything you can tell me as to

24    why?

25         MS. KUNSTLER:  The issue remains the same.  There

F26QkorS

1    is -- on June 7, 2013 there was a court appearance for which we

2    obtained an audio recording and a written transcript.

3    Mr. Kornegay believes this record is incomplete and that the

4    audio and the transcript don't reflect what the full nature of

5    what happened at that appearance.

6            THE COURT:  OK.

7            Mr. Kornegay, I am prepared to go forward with

8    sentencing today.  I have received quite effective sentencing

9    submissions from both sides, including from your lawyer.

10           In fact, it's a very impressive sentencing submission.

11   I understand that there remains this issue that has been a

12   source of concern for you for some time about some form of

13   waiver that you believe you were forced to or did make in June

14   of 2013, which apparently is not reflected in any written or

15   audio material you've gotten.

16           I will tell you that based on my review of all the

17   material, even assuming something of that nature happened

18   there, it's entirely irrelevant to sentencing.  There is no

19   right that I'm aware of that you gave up.  It has not in any

20   way affected your rights in the trial or the sentencing

21   proceeding.  So I am a little bit lost as to what relevance it

22   has.

23           If you're saying something different, which is that

24   you have some discomforts with Ms. Kunstler as your counsel, I

25   would welcome knowing that because it may or may not require me

1   to consider that representation.  I will tell you though that

2   the quality of the submission Ms. Kunstler made was quite fine.

3          Mr. Kornegay, what is your view?  Do you want to go

4   forward today?  If not, why not?

5          THE DEFENDANT:  Well, I came here with the intentions

6   to move forward, but -- if me relieving Ms. Kunstler as my

7   attorney is going to put a hold on my sentencing, I would

8   rather not then.  I would just move forward.  But if it's

9   possible that I can obtain new counsel after today's date, you

10  know, further on for my appeal, if it's possible because, you

11  know, my requests are pretty hard to get accomplished for me.

12  It's been like that throughout my whole process, so it's like

13  I'm not sure --

14         THE COURT:  Mr. Kornegay, I'm trying to understand

15  what you are saying.  Do you have any hesitation about the work

16  that Ms. Kunstler has done in representing you in connection

17  with sentencing?

18         THE DEFENDANT:  Mmm, I can say no, not -- not as much.

19  As far as she puts it all together, I think she did a pretty

20  good job, but just like through the process I felt that we just

21  weren't seeing eye to eye.

22         THE COURT:  In other words, is there anything you

23  wanted to have brought to my attention in connection with the

24  sentencing process that has not been brought to my attention?

25         THE DEFENDANT:  Nah.  No.

F26QkorS

1          THE COURT:  For example, I've received quite a number

2      of letters from you that give me some insight, for example,

3      into your life experience independent of the events that gave

4      rise to the indictment in this case.

5          THE DEFENDANT:  Mmm-hmm.

6          THE COURT:  I found that to be helpful.  What I am

7      asking you is:  Before we go forward here, I want to make sure

8      there isn't something that you wanted to have before me that

9      wasn't put before me.  Did she bring to my attention everything

10     you wanted her to?

11         THE DEFENDANT:  No.

12         THE COURT:  No, she did not --

13         THE DEFENDANT:  No, she did not bring what I wanted

14     her to bring -- for your attention, for you to know.

15         THE COURT:  What was it that's missing?

16         THE DEFENDANT:  Well, I sent you my request in the

17     reconstruction of the hearing because that -- that had a lot to

18     do with me moving forward with the counsel that I've had.

19     That's why as on record it shows that I've had numerous of

20     counsel because of this situation.

21         THE COURT:  Right.  I guess what I am trying to

22     understand is, Mr. Kornegay, what happened in your view at that

23     hearing that you think would be relevant to sentencing.

24         THE DEFENDANT:  The fact that I was -- that in court,

25     you know, I signed documents that I didn't know what I was

F26QkorS

1    signing and the fact that my lawyer dismissed me having

2    knowledge of this to the magistrate judge at the time because

3    he asked if I understood what was going on, but my lawyer took

4    it upon herself to go yes, and I didn't really know.

5              THE COURT:  Look, I appreciate that, and this is

6    consistent with what you have been concerned about at other

7    points in this case.

8              Let me say this if it is any reassurance:  Whatever

9    happened that day in magistrate's court is completely

10   irrelevant to me in terms of determining what a just and

11   reasonable sentence is for you.  Under the law, in imposing

12   sentence, as you know -- and as I will review when sentencing

13   goes forward -- I am to consider a variety of factors under

14   what is called the Sentencing Statute, Section 3553(a).  One of

15   them is the Sentencing Guidelines.  Another involves a variety

16   of factors, including your life history and your

17   characteristics, the interests of deterrence, the interest of

18   just punishment, the interest of incapacitation, various

19   factors that I know you're aware of.

20             Whatever happened procedurally back in magistrate's

21   court back in June of 2013 simply doesn't bear on any of those

22   considerations.  Whatever happened there would not in any way,

23   shape or form affect the sentence that I impose here.

24             So, I understand that you are distressed that what you

25   recall having happened in magistrate's court is not being

F26QkorS

1   reflected in the materials that your counsel have gotten to

2   you.  I can't sort that out, but I can tell you that it has

3   nothing to do with this proceeding.  I am not aware as I sit

4   here now of any meaningful right that you gave up.  The whole

5   way the case has proceeded has been with your having invoked

6   all of your rights, including, importantly, the right to go to

7   trial and put the government to its proof.

8           So, I hope that is of some help to you in

9   understanding where I'm coming from.  If you would like an

10  adjournment of sentencing, I need to understand just a little

11  more about why.  Is there some information, putting aside the

12  June 2013 hearing, that you wanted Ms. Kunstler to bring to my

13  attention in connection with sentencing?

14          THE DEFENDANT:  In connection with the sentencing, no;

15  but for my appeal purpose, yes.

16          THE COURT:  In other words, after sentencing --

17          THE DEFENDANT:  Yes.

18          THE COURT:  -- I will advise you that you have a right

19  to appeal, and that if you want to file a notice of appeal that

20  there is a deadline for doing so.  I'm sure Ms. Kunstler will

21  assist you with that.

22          Your point though is that you would like a different

23  lawyer to represent you in connection with your appeal than

24  Ms. Kunstler?

25          THE DEFENDANT:  Yes.

F26QkorS

1          THE COURT:  Why is that?

2          MS. KUNSTLER:  Your Honor, if I may?

3          THE COURT:  Yes.

4          MS. KUNSTLER:  I think that this is a -- that I would

5    be happy to file a notice of appeal on behalf of Mr. Kornegay,

6    but we do have different opinions on the best way to proceed

7    here that I think are irreconcilable in terms of the best

8    course of action on appeal.  I think I would with the support

9    of -- with the support of Mr. Kornegay, I was intending to file

10   such a letter after filing the notice with the appellate court.

11         THE COURT:  I take it, Mr. Kornegay, you would be

12   seeking a new court-appointed lawyer to assist you with appeal?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Ms. Kunstler, look, I will be happy to

15   receive that application assuming as you represent that there

16   is enough of a breakdown in the attorney/client relationship as

17   it relates to what the content of an effective appeals brief

18   would look like.

19         If you get me a prompt letter, I will arrange for the

20   appointment of a new lawyer for Mr. Kornegay.  I will ask you

21   to assist him with the filing of a notice of appeal to make

22   sure that his rights are not prejudiced in that way, but please

23   get me an application for such an appointment urgently.

24         MS. KUNSTLER:  Yes, your Honor.

25         THE COURT:  It may be that I need -- I expect I will

1    need to have a conference with you and Mr. Kornegay at some

2    point after sentencing on which a new duty attorney is here who

3    can take over for you if I decide to grant that application.

4              MS. KUNSTLER:  Your Honor, in situations like this in

5    the past what I've normally done is file the notice and then

6    file a motion to withdraw with the circuit.  I don't know that

7    you need to be involved in it, although if the Court wants to

8    entertain that application and do it here, we can do that.

9              THE COURT:  That's fine.  If the circuit will be

10   amenable to the application, I'm glad for the circuit to do it

11   inasmuch as it is about the appeal.  So I will just put on the

12   record this then to the extent it is helpful to Mr. Kornegay in

13   connection with seeking a new lawyer.

14             Mr. Kornegay has indicated that he is fine with the

15   materials that have been submitted in connection with

16   sentencing, but he has indicated that there is some difference

17   of opinion between him and Ms. Kunstler as to how best to

18   represent his interests on appeal.  Ms. Kunstler in turn has

19   confirmed that after thoughtful review, there is some

20   difference of opinion between her and Mr. Kornegay.

21             I, therefore, on the basis of what's been represented

22   to me agree, that it would be well worth it for Mr. Kornegay to

23   get new counsel on appeal.

24             Ms. Kunstler, you're at liberty to bring that to the

25   Court of Appeals' attention to the extent you are applying to

F26QkorS

```
1    be relieved, and to have a new lawyer substituted for you.  OK?
2             MS. KUNSTLER:  Thank you, your Honor.  I may bring it
3    before this Court given this is an unusual case with the number
4    of lawyers that have preceded me, so I may consider which path
5    to take.
6             THE COURT:  I leave it to your good judgment.  But
7    either way you're responsible for filing a notice of appeal and
8    either way please do that soon.
9             MS. KUNSTLER:  Absolutely.
10            THE COURT:  With that, Mr. Kornegay, are you
11   comfortable proceeding ahead with sentencing today?
12            THE DEFENDANT:  Yes, sir.
13            THE COURT:  Ms. Kunstler, is there any reason why I
14   shouldn't proceed with sentencing today?
15            MS. KUNSTLER:  No, your Honor.
16            THE COURT:  Ms. Cucinella?
17            MS. CUCINELLA:  No, your Honor.
18            THE COURT:  Then I need to go through some of the
19   formalities here before we get to the heart of the matter,
20   which is getting the views of each party as to the appropriate
21   sentence.
22            Ms. Kunstler, have you read the presentence report?
23            MS. KUNSTLER:  I have, your Honor.
24            THE COURT:  Have you discussed it with your client?
25            MS. KUNSTLER:  Yes.
```

F26QkorS

```
 1              THE COURT:  Mr. Kornegay, have you read the
 2    presentence report?
 3              THE DEFENDANT:  Yes, sir.
 4              THE COURT:  Have you discussed it with Ms. Kunstler?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  Have you had opportunity to go over with
 7    her any errors in the report or anything else that should be
 8    taken up with the Court?
 9              THE DEFENDANT:  Yes, your Honor.
10              THE COURT:  Ms. Cucinella, have you reviewed the
11    presentence report?
12              MS. CUCINELLA:  I have.
13              THE COURT:  Let's put aside the calculation of the
14    Sentencing Guidelines for now and just look at factual
15    accuracy.  Are there any objections to the presentence report
16    regarding its factual accuracy?  I do note that there are a
17    couple of factual errors that the defense has drawn to my
18    attention in paragraph 85.  Putting those aside, is there
19    anything else?
20              MS. CUCINELLA:  Not from the government.
21              MS. KUNSTLER:  No other objection to factual accuracy,
22    your Honor.
23              THE COURT:  Turning to paragraph 85, which is entitled
24    educational, vocational or special skills, the defense has
25    requested that I attach as an exhibit Mr. Kornegay's high
```

F26QkorS

1     school equivalency diploma.  I'm glad to do that.

2             Second of all, the defense has asked that in paragraph

3     85 it be added that the defendant had vocational training in

4     business skills and building maintenance during a prior period

5     of incarceration.  I'm glad to add that as well.

6             Ms. Kunstler, does that respond to the factual

7     objections the defense raised?

8             MS. KUNSTLER:  Yes.

9             THE COURT:  Is there anything further?

10            MS. KUNSTLER:  No.

11            THE COURT:  Hearing no other objections then, I will

12    adopt the factual recitations set forth in the presentence

13    report with the modifications I've made today in paragraph 85

14    of the attachment.  The presentence report will be made part of

15    the record in this matter.  It will be placed under seal.  In

16    the event appeal is taken, counsel on appeal may have access to

17    the sealed report without further application to this Court.

18            Is there any reason why the parties' sentencing

19    submissions should not be publicly filed?

20            MS. CUCINELLA:  The government doesn't see any.

21            MS. KUNSTLER:  Your Honor, we submitted redacted

22    filings with respect to Dr. Drob's report.

23            THE COURT:  That's fine.  My concern is always that

24    the sentencing submission, at least as redacted, be publicly

25    filed as opposed to being left out of the public record

F26QkorS

1    entirely; but if you have made appropriate redactions, those

2    are fine.  But do make sure the balance is publicly filed.  It

3    sounds like it has been.

4              MS. KUNSTLER:  Yes.

5              THE COURT:  Very good.

6              The first step then in the sentencing process is for

7    me to calculate how the Sentencing Guidelines apply here.

8    Although the Court is not required to follow the Sentencing

9    Guidelines, I am required to consider the applicable guideline

10   in determining what a reasonable sentence is.  Therefore, to do

11   so, it is necessary that I accurately calculate the guideline

12   range.

13             Here, the parties dispute several aspects of how the

14   guidelines apply, and I am going to resolve those disputes.

15   Please advised though -- and I am going to say this again with

16   equal clarity later in the proceedings -- that in this case, it

17   is the underlying facts more than the guidelines' application

18   to them that is what matters to me.  So, it is those facts, not

19   the guidelines, that influence me in determining what the just

20   and reasonable sentence is.  But I nevertheless have to go

21   through the exercise of determining how the guidelines apply,

22   so here it goes:

23             The first issue involves calculating the offense

24   level.  I am going to do that first on the assumption that the

25   career offender guideline did not apply and then on the

F26QkorS

1    opposite assumption.

2          On the assumption that it does not apply, I find the

3    offense level to be 26.  I share the conclusions in the

4    presentence report that Section 2B1.3 applies; that there are

5    three groups, one for each of the robberies underlying

6    substantive Counts 2 through 4; that the base offense level for

7    each is 20; and that a three-level enhancement applies for the

8    Eighth Avenue and Park Avenue robberies for the brandishing or

9    possession of a dangerous weapon pursuant to Section

10   2B3.1(b)(2)(E).  Now, I understand that, the defense disputes

11   this adjustment, but I find it to be applicable both as to the

12   wire cutters and separately as to the knife.  It seems to me

13   obvious that both a knife and sharp wire cutters are dangerous

14   weapons within the meaning of the guidelines.  The evidence at

15   trial was clear that these were brandished and indeed, in some

16   instances, the threats of physical harm were made by one of the

17   robbers, which at least implicitly was a threat referencing

18   that the object carried by the robbers could be used on a store

19   employee were there resistance.

20          I also find that the brandishing of the knife, even to

21   the extent it was made by a confederate of Mr. Kornegay's, was

22   foreseeable to him.  Mr. Kornegay was present in the T-Mobile

23   store on Sixth Avenue when the knife was brandished to a

24   security guard.  There was also testimony that during the

25   March 2, 2010 robbery of the AT&T store, one of the workers,

Stephen Rosario, explained that one of the robbers was

displaying a knife.  Mr. Kornegay was present for that robbery

too.  The broader context supports that he was aware of the

weapons brought and brandished.  Mr. Kornegay was a participant

in each of the nine robberies.  There was a common modus

operandi to them.  The robbers were in close proximity to one

another during the robberies and the brandishing of the knife

was of a piece with the brandishing of the wire cutters.  Both

were used to get store employees to back off from blocking the

robbers, from interfering with the robbery or the robbers'

getaway.

          In addition, the adjustment applies if the dangerous

weapon was possessed.  Under the circumstances, it was totally

foreseeable to Mr. Kornegay that a knife would be possessed by

one of his fellow robbers.  There is no basis on which I can

find that bringing the knife to a robbery by a co-conspirator

was an ultravires or unexpected act by the individual robber

acting alone and outside the common plan of the group.

          I realize the government in an earlier offered plea

agreement that was rejected by the defense was not going to

pursue this adjustment.  That, however is legally irrelevant.

The determination would have been made even under those

circumstances by the Court, not by the government; and the

government's forbearance in order to secure a plea does not

bind its position at sentencing, particularly with the defense

1    having rejected the plea offer.  That is particularly so since

2    it is likely that during trial preparation and trial, the

3    government developed a sharper view of the facts of each

4    robbery and made a focus more on this particular adjustment.

5            The trial record makes clear that the adjustment fits.

6    As the overall offense level formed by these groups these,

7    three counts are not grouped together.  They must be combined

8    instead under the multiple count rules, and that's what leads

9    me to an offense level of 26.

10           The next issue involves the defendant's criminal

11   history.  The parties appear to agree that even if the career

12   offender guideline did not apply, the defendant's Criminal

13   History Category would be level VI.  I agree with that based on

14   the facts in the presentence report.  I accept the calculations

15   to that effect set out in the presentence report.

16           Putting all of this together, my determination is that

17   if the career offender guideline did not apply, the defendant's

18   guideline range would be between 120 and 150 months

19   imprisonment.

20           The next issue then is whether the career offender

21   guideline does apply.  The parties dispute that issue, and I

22   found everyone's sentencing submission to be helpful.  I

23   understand, Ms. Kunstler, that the career offender guideline

24   has a dramatic effect on the defendant's sentencing range.  It

25   yields a guideline range that you regard as unreasonably high,

and that is a substantial argument, but the first order of

business is to consider whether in fact as a literal matter of

guideline application the career guideline applies.

Here I find that it does apply.  Defense's main

challenge is to the inclusion as one of the underlying crimes

of violence of Mr. Kornegay's youthful offender conviction for

second degree robbery.  The facts adduced are that a jewelry

store was robbed by a group of youths, including Mr. Kornegay,

then age 16, and that one of the robbers pushed a store

employee to the ground.  Mr. Kornegay was ultimately sentenced

to one and a third to four years imprisonment for this offense.

Under the guidelines, second degree robbery is unquestionably a

crime of violence under the guidelines.  Factually, some degree

of violence was used by a confederate of Mr. Kornegay's.  On

both of those grounds independently, I find, therefore, that

this conviction qualifies and is properly tabulated in

determining career offender status.

Therefore, I find, like the presentence report, that

the career offender guideline applies here.  The result of that

is to increase Mr. Kornegay's offense level from level 26 to

level 32.  His Criminal History Category would remain the same

at level VI.  The resulting guideline range though would

become, and does become, 210 to 262 months imprisonment, which

I recognize is a substantial increase over the guideline range

that would otherwise apply.  Ms. Kunstler, in making this

F26QkorS

1    finding I am not in any way stating that I believe that the

2    guideline range is necessarily the proper range in which

3    sentencing should apply.  You are at full liberty to make, as

4    you have effectively in your sentencing submission, the

5    argument that sentencing range is unreasonably high.  But as

6    strict matter of guidelines math, I find that to be the correct

7    and applicable guideline range.

8          The next subject I need to cover is departures, which

9    is to say, within the framework of the Sentencing Guidelines.

10   The defense argues that a downward departure below the career

11   offender guideline is merited.  Under Section 4A1.3(b) of the

12   guidelines, a downward departure of one criminal history

13   category is merited if the defendant's criminal history

14   category substantially overrepresents the seriousness of the

15   defendant's criminal history category or the likelihood that

16   the defendant would commit further crimes.  With respect, I do

17   not find that to be the case.  Mr. Kornegay has a long criminal

18   history which was calculated at level VI based on his having 15

19   criminal history category points even before consideration was

20   had of the career offender guideline.

21         In addition, I'm mindful that the evidence here

22   convincingly established fully nine separate cell phone store

23   robberies that he participated in; not just the three as to

24   which there were substantive counts charged and found.

25   Criminal History Category VI thus aptly captures the length and

F26QkorS

1    depth of Mr. Kornegay's criminal record.  There is no evidence

2    on which I can find less than a likelihood of recidivism.

3    Mr. Kornegay's track record is to the contrary.  Therefore, I

4    decline to downwardly depart within the guidelines framework.

5         That said, the defense has substantial arguments

6    within the broader framework of the Section 3553(a) factors

7    that a sentence within the guideline range of 210 to 262 months

8    imprisonment overstates what is necessary here to take account

9    of 3553(a) factors.  It is my expectation coming into the

10   sentencing that on the basis of those arguments and based on my

11   consideration of the relevant factors, I will impose a sentence

12   below the range set by the career offender statute.

13        So, I am denying the motion for a downward departure

14   made as it is within the rather confining strictures of the

15   Sentencing Guidelines.  I don't find that a downward departure

16   here is available as a matter of law.  Even if I did, I would

17   decline to exercise my discretion to depart.  I would, and

18   will, instead achieve the same objective of imposing a below

19   Guidelines Sentence by means of making a downward variance

20   under Section 3553(a).

21        So, that I think exhausts all the technical

22   preliminaries.  With that, does the government wish to be heard

23   with respect to sentencing?

24        MS. CUCINELLA:  Your Honor, for the most part, we are

25   going to rest on the submission.  We just reiterate that the

F26QkorS

```
 1    government believes a significant incarceratory sentence is
 2    appropriate here.  The defendant has proven, as your Honor has
 3    just noted, again and again that this is what he goes back to.
 4    He has been given a number of chances.  His incarceratory
 5    sentences thus far have not been significant, and he has almost
 6    immediately upon release each time gone back to committing
 7    robberies.  We have real concerns of recidivism here, real
 8    concerns about the safety of the community, and we believe
 9    given those, that a significant incarceration is appropriate
10    here.
11            THE COURT:  Thank you.  Let me ask you whether you
12    agree with the restitution amounts and addressees in the
13    presentence report?
14            MS. CUCINELLA:  I believe that those are correct.  I
15    have consulted with Ms. Griswold, and she has not raised them
16    as being incorrect.  So, going forward, I believe they are
17    correct.  If there are any errors, we will definitely address
18    the Court and let probation know.
19            THE COURT:  It would be my intention, inasmuch as
20    there are specific numbers and addressees here, to include as
21    part of the judgment in the case the order that restitution be
22    made to those people in those amounts.  On that assumption, I
23    will ask you by Monday, if possible, to get me a restitution
24    order that memorializes that.
25            MS. CUCINELLA:  Absolutely, your Honor.
```

1          THE COURT:  I take it the government is not seeking

2    forfeiture on top of restitution?

3          MS. CUCINELLA:  That's correct.

4          THE COURT:  Does defense counsel wish to be heard?

5          MS. KUNSTLER:  Yes, your Honor.  I just wanted to make

6    one factual correction.  I believe your Honor said a jewelry

7    store, when the robbery was a perfume store.

8          THE COURT:  I'm sorry.  That probably speaks to my

9    broader insensitivity to matters of jewelry and perfume.  In

10   any event, I correct what I said.

11         MS. KUNSTLER:  Thank you, your Honor.

12         Your Honor, this is an unusual sentencing.

13   Mr. Kornegay is not a defendant and this is not a case that

14   easily fits into a box.  He went to trial and lost.  He fully

15   intends to appeal his conviction.  Acceptance of responsibility

16   and remorse are areas in which I normally focus on in

17   sentencing do not apply here.

18         Despite that fact, as I argued in my papers and as the

19   Court recognizes, it is our position that a sentence of 210 to

20   262 months is excessive.  This is a case to me that really

21   speaks to the parsimony clause and speaks to consideration of

22   what's sufficient but not greater than necessary to comply with

23   the sentencing factors.

24         Now, I recognize that this is an incredibly serious

25   crime.  I recognize that the Court must impose a sentence that

1    reflects that and reflects the other factors outlined in

2    3553(a)(2), but I do think that equities in this case support

3    an individualized sentence.

4            I understand the Court knows this already, and a lot

5    of what I prepared to write today, I don't feel the necessity

6    to say given what the Court has already stated today, but I do

7    want to note that in looking at the Exhibit that the government

8    submitted as an attachment to its sentencing letter, the

9    exhibit where it noted that -- the report showed that a little

10   less than 50 percent, that the average sentence for career

11   offenders was 160 months, far lower than the guidelines range

12   in this case.  The government also noted that the report showed

13   that defendants who did not receive government-sponsored

14   below-guideline sentences, of those, a little more than

15   50 percent received within guideline sentences, so the other

16   side of that coin is that a little less than 50 percent

17   received below guideline sentences.

18           THE COURT:  When you say "guideline sentence," you

19   mean Sentencing Guidelines as generated by the career offender

20   status?

21           MS. KUNSTLER:  Yes, that about half of, according to

22   that commission report, received below career offender

23   guideline sentences.  When the government highlights that

24   number, I think their intention is to say Mr. Kornegay is a

25   member of this class.  These are a number of people who are

F26QkorS

1    similarly situated to Mr. Kornegay, and of that a hundred

2    percent, a little more than 50 are getting guideline sentences,

3    career offender sentences.

4          But I think what our sentencing submission shows is

5    that he is precisely the type of defendant who falls in the

6    slightly less than 50 percent that receives non-guideline

7    sentences.  He is of that class of defendants that gives judges

8    pause precisely because one of the offenses that triggers that

9    guideline is an offense that is remote in time and that

10   happened when he was a very young person.  This is the group of

11   offenders noted in that '86 Law Review Article I cited which

12   addresses departures.  This is also the group of offenders

13   noted by Judge Bennett in *U.S. v. Neuhaus*, the opinion I

14   attached to my papers.

15         The fact is that when Mr. Kornegay was 16-years-old,

16   he was part of a large group of teenagers who robbed a perfume

17   store.  If that happened today, the crime might have been

18   treated differently.  We certainly look at young people

19   differently today.  There's been a large body of science and

20   recent Supreme Court decisions about how the teenage brain

21   works differently.  Now we understand that teenagers make

22   reckless decisions.

23         So, given what we know now, I see the sentence as an

24   opportunity not to change the past but to acknowledge it, to

25   acknowledge that we see youth differently today and to evaluate

F26QkorS

1  the career offender guideline through that new lens of how

2  young people make reckless, impulsive decisions that should not

3  define the rest of their lives.

4      I understand this is in the context a person who went

5  on to commit further crimes, but I submit that the longest term

6  of incarceration Mr. Kornegay has received so far is 54 months.

7  He has two substantial sentences:  One for a crime committed at

8  16, and one for a crime committed at age 22.  They were severe

9  sentences.  I understand that the government looks at this

10  criminal history and says Mr. Kornegay is not a person who is

11  getting the message; that he is not a person who has learned

12  from his mistakes.  But I think that these sentences were

13  severe for somebody so young.  It's also clear that

14  Mr. Kornegay is a person who never got the help he needed and

15  who never got a break from anyone and a person who was routed

16  into the criminal justice system at a very young age.

17      I also want to recognize Mr. Kornegay's family who are

18  here in the courtroom today to support him, who have written

19  letters to this Court that show Mr. Kornegay is more than the

20  sum of his crime; and not just letters from his family, your

21  Honor, but letters from people who he is incarcerated with at

22  the MCC; that Mr. Kornegay is a person with real relationships

23  who form strong ties, who people care about, and who cares

24  about others.

25      That to me also highlights a little bit of what is

F26QkorS

1    unfortunate about where we find ourselves today in this

2    courtroom.  On balance, I stand with my papers and for the

3    reasons argued in my papers that a sentence of 92 months, which

4    is a considerable sentence, is a sentence that will reflect the

5    seriousness of the offense, promote respect for law, provide

6    just punishment, afford adequate deterrence and protect the

7    public from future crimes.

8            Thank you, your Honor.

9            THE COURT:  Thank you.  Mr. Kornegay, do you wish to

10   make a statement?

11           (Audience speaking)

12           THE DEFENDANT:  Can I stand?

13           THE COURT:  Please by all means.

14           THE DEFENDANT:  I just want to say I love y'all here.

15           (Audience speaking)

16           THE DEFENDANT:  Your Honor, my family, you know,

17   that's the only thing that I have in this world, so...

18           THE COURT:  I would just ask you to speak up.  I'm

19   having a little difficulty hearing you.

20           THE DEFENDANT:  I said my family is the only thing I

21   have in this world, and it's the only people who has been there

22   for me no matter what I went through.  Even times when I was

23   right and some things when I was wrong, you know, so I -- I

24   just give them -- I just want to thank them for always being

25   there for me and accepting the things that I've done and, you

F26QkorS

1   know, just help me molding me to be the person I am today.

2          As far as my case, I -- I pretty much said as much as

3   I could say about it because it's just another fight within a

4   fight, you know.  You know, it's a lot of -- it's a lot of

5   points that have been taken away from me for this, and this

6   situation, this process it's like one of the worst things I

7   ever been through in my life, but I'll be all right.  That's

8   all.

9          THE COURT:  Thank you, Mr. Kornegay.

10          I am going to take a few moments and collect my

11   thoughts.

12          (Pause)

13          (Audience speaking)

14          THE COURT:  Is there any reason why sentence should

15   not now be imposed?

16          MS. CUCINELLA:  No, your Honor.

17          MS. KUNSTLER:  No, your Honor.

18          THE COURT:  As I have stated, the guideline range that

19   applies to this case based on application of the career

20   offender guideline is between 210 and 262 months imprisonment.

21   Without that guideline, the guideline range would be 120 to 150

22   months imprisonment.

23          Under the Supreme Court's decision in *Booker* and the

24   cases that have followed it, the guideline range though is only

25   one factor that a court must consider in deciding the

F26QkorS

1    appropriate and reasonable sentence.  The court is also

2    required to consider the other factors set forth in Title 18

3    United States Code, Section 3553(a) of the sentencing statute.

4         Those factors include the following:  The nature and

5    circumstances of the offense, the history and characteristics

6    of the defendant, the need for the sentence imposed to reflect

7    the seriousness of the offense, to promote respect for the law

8    and to provide just punishment for the offense, the need for

9    the sentence imposed to protect the public from further crimes

10   of the defendant, the need for the sentence imposed to afford

11   adequate deterrence to criminal conduct, and the need for the

12   sentence imposed to provide the defendant with needed

13   educational or vocational training, medical care or other

14   correctional treatment in the most effective manner.

15        The court is required to impose a sentence sufficient

16   but no greater than necessary to comply with the purposes set

17   out above.  That is the parsimony clause to which Mr. Kunstler

18   referred to a few moments ago.  I find that the sentence I am

19   about to pronounce is sufficient but not greater than necessary

20   to satisfy the purposes of sentencing that I've just mentioned.

21        Mr. Kornegay, I am obviously quite familiar with this

22   case, having presided over the trial and I have read carefully

23   the excellent sentencing submissions that I have received from

24   both sides.  I've given a lot of time and thought and attention

25   to the appropriate sentence in your case in light of those

1    facts and in light of the statutory factors, the ones that I

2    just reviewed, the ones that Section 3553(a) requires me

3    consider.

4         These are my thoughts:  The first Section 3553(a)

5    factor that I considered is the seriousness of your offense.

6    Yours was very serious.  The evidence at trial showed that you

7    and your co-conspirators robbed nine cell phone stores in New

8    York City.  Each time the group used cutting tools to steal

9    display cell phones.  On various robberies, those tools or

10   knives were brandished at employees; and employees who

11   attempted to interfere with the robbery or the robbers' escape

12   were threatened or pushed out of the way.

13        The robbery is serious for much more than the

14   merchandise that was taken.  You created a serious risk each

15   time that violence, maybe even deadly violence, would occur.

16   It is a credit largely to the restraint of the security guards

17   and other store employees that each time they had the chance to

18   block or fight one of the robbers or prevent them from leaving,

19   they eventually showed the good judgment to stand down.  As I

20   recall one of the trial witnesses saying, "It's only a cell

21   phone."  Of course, another reason they stood down was because

22   of the wire cutters and knives that the robbers had with them.

23   They were armed; the employees were not.  My point is that it

24   is really only a matter of good fortune and good judgment by

25   the victims that none of the robberies led to serious injury or

F26QkorS

1    even death.

2         The robberies were also deeply wrongful in the way

3    they generated fear.  I was really struck watching the security

4    videos and listening to the witnesses how terrified some of

5    them were, and who wouldn't be, by having a group of three or

6    four men approximately enter a store, their identities partly

7    concealed under hats and jackets, bearing cutting tools,

8    brandishing wire cutters and/or knives, helping themselves to

9    merchandise and threatening employees who got in their way and

10   muscling others out of the way.  Any incident like that would

11   likely scar or scare an employee or, for that matter, a

12   customer for perhaps a long time.  You are among those

13   responsible for that.  It was inherit in your scheme and,

14   indeed, a critical part of it to instill fear in the people

15   that were robbed to get them to back off from getting in the

16   way.

17        The final aspect of the seriousness of the offense is

18   obvious, but I will say it anyway:  It is the sheer number of

19   stores that were hit:  Nine stores in total.  That is a lot of

20   people who were robbed, scared and threatened.

21        Under Section 3553(a), I need to consider as well the

22   need for what is called just punishment.  Like the seriousness

23   of the offense, this factor calls for a very long sentence here

24   and for much the same reasons.

25        I also am to consider the need to promote respect for

F26QkorS

the law.  Here, too, a long sentence, I'm sorry to say, is
needed, less the laws against robberies, including robberies
facilitated by cutting tools be treated as less than vitally
important.

I am also to consider the interest in general
deterrence.  That means the need to send a message to other
people who would consider committing similar crimes; that is to
say, store robberies, that is sufficient to deter them from
following your lead.  There is enough crime in the city that we
can be sure there are people who every day consider robbing
stores.  Your sentence needs to be long enough to ensure that
another would-be robber out there knows that if they rob
multiple stores using knives or wire cutters no less and get
caught, they can count on going to jail for a long time.

A very important consideration for me here is what is
called specific deterrence.  That means the need to send a
message to you personally, Mr. Kornegay, that is sufficient to
deter you from committing more crimes when you are released
from jail.  You have a long criminal history, which is aptly
reviewed in the presentence report and in the government's
sentencing submission.  There is nothing in your history that
says to me that any punishment previously inflicted has
deterred you in any way from committing crimes.  Indeed, you
committed this spree of nine robberies after having been
prosecuted for a very similar prior robbery.  I cannot be sure

whether any sentence I impose here will get through to you, but if any sentence does, it needs to be materially longer than your prior ones.

Under Section 3553(a) an important factor is also public protection, or what is called incapacitation.  In this case, I find that factor to be extremely important.  Given your long record of committing serial and similar robberies, there is every reason to believe that if you were at large again, you would rob again.  There is nothing in the record before me that suggests any restraint or moral compunctions on your part to hold you back.  There is nothing in the record that suggests that concerns of getting caught or getting put in prison hold you back.  And you are no longer an adolescent.  You can no longer credibly claim to have committed crimes out of the immaturity and recklessness of youth.  I see that pattern in a lot of my cases, but it doesn't fit here.  You committed these nine robberies from about age 27 through 29, and today you are 33.  The record before me, instead, committing such crimes appears to be part of a settled pattern.  Based on your life so far, a person could reasonably conclude that it is what you do. You have done and said nothing to me that says you have accepted responsibility for your mistakes.  I understand you are empathetic to your family, and I respect the sincerity of that, but that is different.

From the letter you wrote me, you appear more focused

1   on what you perceive to be your counsel's shortcomings than on

2   your own accountability.  So, on the assumption that you have

3   not been specifically deterred by this prosecution, I need to

4   impose a long sentence simply to protect the public.  Keeping

5   you in jail for a long period of years is the one sure way to

6   ensure that future employees at cell phone stores or other

7   stores are not subjected to the terrifying invasions that the

8   employees of these nine stores were.  All of these factors, all

9   the ones I've reviewed so far, separately and together, point

10  towards a long prison sentence.

11          That said, there are some factors here that point in

12  the other direction, and I want to review them now.  To begin

13  with, the robberies themselves did not have violence as their

14  objective.  As the videos show, the goal of the robbers was to

15  take the display cell phones and to get in and get out as fast

16  as humanly possible.  To the extent threats or brandishing or

17  pushing occurred, it was to achieve that goal.  It does not

18  appear that you had any desire to physically hurt someone for

19  its own sake.  That is important perspective,  it is important

20  context, and I have it firmly in mind as I reflect on your

21  crimes.

22          Second, on the basis your counsel's extremely

23  thoughtful sentencing submission, it appears to me that you

24  have real difficulty making smart, rational assessments.  That

25  is reflected, frankly, in your dogged focus on the issue of

F26QkorS

whether your first lawyer asked you to sign some form of
waiver, which all of the lawyers and I assured have you is of
no moment.  It may be reflected in your difficulty finding
common ground with your series of lawyers, very capable lawyers
who I appointed sequentially to help you.  It may be reflected
in your persistent committing of crimes, including similar
crimes directed at cell phone stores in the same few
neighborhoods when your experience and common sense had to tell
you, you would eventually get caught, and that this day would
come.  It may reflect itself in your decision to forego the
government's earlier plea offer.

        To be quite sure, I can't give you any credit for
acceptance of responsibility.  There isn't a shred of
acceptance of responsibility reflected on this record.  But to
the extent there is a persistent rigidity in your thinking and
a distrust of advice given to you, and to the extent that may
reflect on some kind of organic inhibition within you, I
consider it relevant to the just sentence.

        Third, under Section 3553(a), I am to consider a
defendant's history and his characteristics.  I have already
reviewed your history as it relates to this crime and to prior
crimes, but from your counsel's sentencing submission, I saw a
different side of you.  I saw a well-loved family man, a fun
uncle, a supportive fellow inmate; in short, a person who, with
his family and in his private life, projects totally

1    differently than the hooded robber of the cell phone stores

2    whom I saw on the videos.

3         I have received a number of letters on your behalf and

4    I want to quote a few of them which gave me some insight which

5    show the source of why I just said what I said.  One of them is

6    from your niece Quinazia Pauling, and she says of you that you

7    are very nice; that you take her to school sometimes.  "He is

8    very important to me."

9         Your niece, Navia Anel Benton, also describes you as

10   very fun.  She says you tell her jokes and brings her snacks.

11   "He tells me he loves me every day."

12        Your goddaughter, Ania Martin, describes you as a very

13   nice person who takes her and her sister and their cousin to

14   school every day.  "He is very important to me," she writes.

15   "I love him very much."

16        The handwriting is a little hard to read.  The next

17   letter is from what appears to be Dijon Pauling.  Forgive me if

18   I got the pronunciation wrong, but you are that letter-writer's

19   uncle, and the letter reads:  "He's always there if I need him

20   or even if I didn't.  I look forward to every moment I got to

21   see him and talk about everything.  He was the type of man to

22   encourage the ones he loves to do what was right."

23        Garisha Pauling -- again, forgive the

24   mispronunciation -- writes:  "I wish my uncle was there to

25   celebrate my recent birthday with me.  He is a wonderful man

F26QkorS

who deserves a better chance in life.  My uncle is talented,
funny, loving, kind-hearted, and a very intelligent man who has
a unique personality, and he's always there for us when we need
him the most."

          Again, I'm giving excerpts, but they're revealing
excerpts.

          Daquan Fagan is the next letter writer, Mr. Kornegay's
brother-in-law.  He writes:  "Over the past 12 years of knowing
Raymond, I've learned he's very dependable, strong, willing and
a kind-hearted person.  He has been a backbone to me through
many hard times in life.  He is someone you can talk to and
express yourself without him judging you.  His words of
encouragement was always powerful.  They would help you get
through the toughest days."

          Tanisha Pauling, your sister writes:  "Among other
things, my brother Raymond loves music.  He can sing very well.
He also likes to write music.  My brother also loves
basketball.  He struggles in his life, but if you have family,
you can get through a lot.  Raymond has a host of friends that
love him and miss him dearly in our neighborhood."

          There are a number of other letters.  I am not reading
them all, but finally your mother writes:  He is a good child.
She describes how you help her.  He is not a bad person, and
she asks me to take into account all of those good qualities.

          Mr. Kornegay, on the day a person is sentenced, it is

F26QkorS

1    appropriate that they be considered in the totality of their

2    life experiences and not merely the crimes they committed.

3    Your sentence today will reflect that, and I am taking into

4    account your many positive qualifies as reflected in those

5    letters.  One of the things I see time and time again in this

6    job is that people are complex, and that the same person who

7    can commit a crime that society justly abhors also can be a

8    good and gentle person in their private life, and I see that in

9    you.

10          I've given a lot of thought today to how the

11   guidelines fit here.  Without the career offender guideline,

12   your sentencing range would be between 120 and 150 months

13   imprisonment.  I don't find persuasive the defense's arguments

14   for a sentence below that range.  The conduct here is much too

15   serious and much too pervasive in the interest in general and

16   specific deterrence, and especially incapacitation, way too

17   strong to justify any such sentence.

18          I've also given a lot of thought to the career

19   offender guideline and the policy considerations underlying it

20   as they apply in this case.  My view here is that that

21   guideline does capture something very real.  The policy goals

22   under that guideline are to incapacitate the career offender

23   and to put others on notice that chronic violence will be

24   punished by very high prison sentences.

25          For the reasons I've covered those goals with track

1   factors identified in 3553(a) are highly relevant here.  The

2   fact, Mr. Kornegay, that you participated in nine cell phone

3   store robberies, whereas the guideline range here is calculated

4   based on just three reinforces the characterization of you as a

5   career offender.

6          It is my intention to impose a sentence somewhat above

7   the guideline range that would otherwise apply to reflect the

8   fact that policies underlying the career offender guideline do

9   resonate and apply here.  At the same time, I think that the

10  career offender guideline here pushes the sentence way too high

11  in this case.  You are a recidivist many times over, and there

12  is a grave risk that if at liberty, you would commit yet more

13  crimes.  But offset against that are the factors I reviewed a

14  few moments ago, primarily the fact that your crimes here are

15  not motivated by violence, it did not involve actual infliction

16  of injury, and I've also taken into account your history and

17  characteristics as I reviewed it a few moments ago.

18         In my view, to reflexively apply the career offender

19  guideline here would elevate the form of that guideline over

20  the substance of the 3553(a) factors.  My judgment, therefore,

21  is that a sentence below the career offender guideline but

22  above the guideline that would apply without that guideline is

23  in order here.

24         I am now going to state the sentence I intend to

25  impose.  Counsel will have a final opportunity to make legal

F26QkorS

1    objections before the sentenced is finally imposed.

2              Mr. Kornegay, would you please rise.

3              After assessing the particular facts of this case and

4    the factors under Section 3553(a), including the Sentencing

5    Guidelines, it is the judgment of the Court that you are to

6    serve a sentence of 180 months imprisonment in the custody of

7    the Bureau of Prisons to be followed by a period of three years

8    supervised release.  I impose the same sentence on each of the

9    four counts.  The sentence is to run concurrently.

10             As to supervised release, the standard conditions of

11   supervised release shall apply.  In addition, you will be

12   subject to the following mandatory conditions which are set out

13   in paragraph page 24 of the presentence report:

14             You shall not commit another federal, state or local

15   crime.

16             You shall not illegally possess a controlled

17   substance.

18             You shall not possess a firearm or destructive device.

19             You shall refrain from any unlawful use of a

20   controlled substance, and you shall cooperate in the collection

21   of DNA as directed by the probation officer.

22             In addition, you must meet the following special

23   conditions, each of which I have determined are appropriate on

24   the facts of this case:  You shall submit your person,

25   residence, place of business, vehicle or other premises under

F26QkorS

1     your control to a search on the basis that the probation

2     officer has a reasonable belief that contraband or evidence of

3     a violation of the conditions of release may be found.  You

4     shall provide the probation officer with access to any

5     requested financial information.  You shall not incur any

6     credit charges or open additional lines of credit without the

7     approval of the probation officer unless you are in compliance

8     with the payment schedule set with respect to the payment of

9     restitution.  You are to report to the nearest probation office

10    within 72 hours of release from custody.

11          Separately, I have the legal authority to impose a

12    fine here.  I am not going to do so.  I am persuaded that you

13    don't have the ability to pay it, and to the extent you do have

14    some money, it ought to be used to pay restitution to the

15    victims here.

16          I am required to impose, and do impose, a mandatory

17    special assessment of $400; $100 for each much your four crimes

18    of conviction; that amount to be paid immediately

19          With respect to restitution, I am going to order the

20    restitution be paid as set out on page 25 of the presentence

21    report, and, again, I'm directing the government to get me a

22    restitution order by the end of Monday that memorializes the

23    terms, payees and addressees, but briefly, you are to pay

24    $3,499.90 to T-Mobile U.S.A. at the name and address reflected

25    on page 25 of the presentence report, and $3,398 to AT&T, also

F26QkorS

1    at the name and address reflected in the presentence report.

2    The government is not pursuing forfeiture, and, therefore, I do

3    not order it here.

4             Does either counsel know of any legal reason why this

5    sentence should not be imposed as stated?

6             MS. CUCINELLA:  No, your Honor.

7             MS. KUNSTLER:  No, your Honor.

8             THE COURT:  The sentence as stated is imposed.

9             Are there any open counts, Ms. Cucinella?

10            MS. CUCINELLA:  I don't believe so.

11            THE COURT:  Mr. Kornegay, I've mentioned this before,

12   but I will now mention it officially.  You have a right to

13   appeal your conviction and your sentence.  If you are unable to

14   pay for the cost of an appeal, you may apply for leave to

15   appeal in forma pauperis.  The notice of appeal must be filed

16   within 14 days of the judgment convict of conviction.

17            Ms. Kunstler has assured me she will file that timely.

18            Is there anything further from the government?

19            MS. CUCINELLA:  No, your Honor.

20            THE COURT:  Is there anything further from the

21   defense?

22            MS. KUNSTLER:  No, your Honor.

23            THE COURT:  Please be seated.  I want to say a word to

24   Mr. Kornegay's friends and family.

25            Ladies and gentlemen, I want to acknowledge the fact

1    that you are here, and I want to thank those of you who wrote

2    letters to me.  Sentencing is the hardest thing I do, and the

3    hardest part about it is to take the measure of the defendant

4    on sentencing and to consider them as more than just a person

5    who committed a particular crime.  That is not easy, and it is

6    often very hard to get a sense of who the person is based on

7    the limited materials that are provided to me.

8         So, in a case like this when I get letters like the

9    beautiful letters I've received from many of you about

10   Mr. Kornegay, I'm appreciative because I get a better sense of

11   who that person is.  The letters you wrote here today gave me a

12   sense of a different side of him, and I can assure you that

13   they made a difference in my determination of what the

14   appropriate sentence was here.  So, I thank you for writing,

15   and please know that as hard as I'm sure it is to hear this

16   proceeding and the sentence pronounced, you made a real

17   contribution to him and affected to his favor the sentence that

18   I did pronounce.

19        Second of all, the very fact that you are all here for

20   him on what has to be one of the hardest days in his life gives

21   me confidence that you will be with him the rest of the way:

22   When he is in prison and, most importantly, when he is

23   released, when I think he really will need the guidance of

24   loving family members and friend network to make sure, frankly,

25   that this doesn't happen again.  It is troubling to me that

F26QkorS

 1    there have been as many crimes reflected as there are in his

 2    presentence report and as I heard about at trial.

 3             You have here a good man.  It is my hope that the

 4    guidance of his family will help lead him in the next chapter

 5    of his life to lead a law-abiding life.  In any event, I thank

 6    you for being here and for participating in the ways you have.

 7             We stand adjourned.

 8             Let me ask, Ms. Kunstler, do you want me to recommend

 9    to the Bureau of Prisons where Mr. Kornegay is to be assigned?

10             MS. KUNSTLER:  May I have a moment?

11             THE COURT:  Of course.

12             MS. KUNSTLER:  We have no specific recommendation

13    other than it be close to New York City to allow family

14    visitation.

15             THE COURT:  You'd like me to designate that he be

16    located at a facility as close to New York as possible?

17             MS. KUNSTLER:  Yes.

18             THE COURT:  I'd be glad to do that and I will do that.

19    Thank you.  We stand adjourned.

20             (Adjourned)

21

22

23

24

25