UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAYMOND KORNEGAY,

                                Petitioner,

                      -v-

UNITED STATES OF AMERICA,

                                Respondent.
------------------------------------------------------------X

16 Civ. 3920 (PAE)
13 Cr. 428 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

      On January 15, 2014, Raymond Kornegay was convicted after a three-day jury trial of one count of conspiracy to commit Hobbs Act robbery and three counts of substantive Hobbs Act robbery, all in violation of 18 U.S.C. § 1951. The charges arose from Kornegay's participation in a series of robberies of smartphones from AT&T and T-Mobile stores in New York City in February and March 2010. The Court sentenced Kornegay to a term of 180 months imprisonment, followed by three years of supervised release. On direct appeal, the Second Circuit affirmed Kornegay's convictions. Kornegay, now *pro se*, petitions to vacate his sentence under 28 U.S.C. § 2255. He argues that his counsel rendered ineffective assistance before and at trial and failed at sentencing to object to the length and conditions of his supervised release term. Dkt. 108 ("Am. Pet.") at 1.[1]

      For the following reasons, the petition is denied.

---

[1] Citations to "Dkt." refer to the criminal docket, and citation to "Civ. Dkt." refer to the civil docket.

## I. Background

On June 4, 2013, a grand jury indicted Kornegay on the above charges. The Hobbs Act conspiracy charge was based on robberies of nine AT&T and T-Mobile stores in Manhattan. The substantive counts related to robberies of three such stores. *See* Dkt. 5.

### A. Trial and Sentencing

Trial was held from January 13 to January, 15, 2014. Dkts. 36, 38, 40. The evidence, including video camera footage, established a common pattern across the nine robberies in which "a group of three to four perpetrators" entered electronics stores in New York City, "pull[ed] the phones off the display, clipp[ed] an attachment cord, place[d] the phones in their pockets," and, at times, used physical force against store employees. Tr. 97.[2] The robberies on which the three substantive counts were based were: (1) the February 19, 2010 robbery of a T-Mobile store at 869 Eighth Avenue in Manhattan, Tr. 268–69, 271–73, 274–75; (2) the February 19, 2010 robbery of a T-Mobile store at 595 Sixth Avenue in Manhattan, Tr. 286–89, 290–292, 296, 298–99; and (3) the March 2, 2010 robbery of an AT&T store on 350 Park Avenue. Tr. 302–05, 307.

Kornegay was identified as a participant in the three robberies by security camera footage, witness testimony, or both. *See* Tr. 97 (police analysis of security camera recordings, identifying one participant with an identical "distinct . . . leatherlike jacket"); Tr. 271–73, 275, 288–89, 290–292 (eyewitness identification of Kornegay and describing him as wearing a distinctive jacket during robberies). Kornegay was also circumstantially implicated in the six additional cell-phone store robberies during this period. Furthermore, he was identified as a participant in an uncharged, but similar, robbery on September 28, 2008, which was admitted as

---

[2] "Tr." refers to the trial transcript in the criminal docket.

proof of identity under Federal Rule of Evidence 404(b). *See* Tr. 79, 90–91, 94–95, 329–346, 353–356.

On January 15, 2014, the jury returned a guilty verdict. Tr. 488–89; Dkt. 5. On February 6, 2015, the Court sentenced Kornegay to the terms above. Dkt. 73 ("Sentencing Tr.").

**B.     Direct Appeal**

On February 11, 2015, Kornegay, represented by counsel, appealed. Dkt. 71. He argued that the trial evidence was legally insufficient; that the Court had wrongly admitted evidence of the uncharged 2008 robbery; and that, under *Johnson v. United States*, 135 S. Ct. 2551 (2015), he had been wrongly classified at sentencing as a career offender under U.S.S.G. § 4B1.1(a). *See* Dkt. 75. On March 8, 2016, the Second Circuit affirmed the conviction and sentence in a summary order. *See United States v. Kornegay*, 641 F. App'x 79 (2d Cir. 2016).

**C.     Kornegay's Initial § 2255 Petition**

On May 25, 2016, Kornegay, represented by Federal Defenders, petitioned to vacate his sentence under § 2255, making three arguments. Dkt. 76 ("Mot. to Vacate"). He argued that his sentence was "unreasonably high." He argued that he should be resentenced in light of *Johnson*, which had held the residual clause of the Armed Career Criminal Act ("ACCA") unconstitutionally vague; *Descamps v. United States*, 133 S. Ct. 2276 (2013), which he argued precluded use of his 1998 robbery conviction as a predicate offense under U.S.S.G. § 4B1.1(a); and *Welch v. United States*, 136 S. Ct. 1257 (2016), which held that *Johnson* applies retroactively. Mot. to Vacate. And he argued that his counsel at sentencing had been ineffective for failing to challenge his classification as a career offender. *Id.*

On July 25, 2016, this Court granted Kornegay's motion to stay his petition until the Second Circuit had considered his direct appeal in light of *United States v. Jones*, 830 F.3d 142

3

(2d Cir. 2016), *vacated*, 838 F.3d 296 (2d Cir. 2016), which had issued after Second Circuit's affirmance, *Kornegay*, 641 F. App'x 79, but before it had issued a mandate. Dkt. 86. On April 26, 2017, the Second Circuit issued its mandate, affirming the judgment of this Court on direct appeal and denying Kornegay's motion to remand for resentencing. *Kornegay*, 641 F. App'x 79.

### D. Kornegay's Motion to Supplement his § 2255 Petition

On January 11, 2018, Kornegay moved, *pro se*, to supplement his § 2255 petition with claims of ineffective assistance of counsel. Dkt. 104 ("Mot. to Suppl."). He claimed that: (1) his pretrial counsel, Bobbi Sternheim, Esq., had been ineffective for failing to exercise proper diligence after the Government had disclosed that it had an eyewitness who could identify Kornegay as a robber of one of the stores; (2) his trial counsel, Marlin G. Kirton, Esq., had similarly been ineffective for failing to properly investigate the Government's claim to have such an eyewitness; and (3) Kirton had been ineffective for failing to "follow[] up" on a plea offer from the Government. *Id.*; *see also* Dkt. 105 ("Pet'r's Aff.").

On January 25, 2018, the Federal Defenders notified the Court that the Second Circuit had declined to grant Kornegay relief under *Johnson*, vitiating much of his initial § 2255 petition, and asked the Court to grant Kornegay leave to amend his *pro se* § 2255 petition. *See* Dkt. 106. On January 26, 2018, this Court issued an order that construed Kornegay's January 11, 2018 motion to supplement as a motion to amend and then granted that motion. Civ. Dkt. 7.

### E. Kornegay's Final Amended § 2255 Petition

On April 12, 2018, Kornegay filed a final amended § 2255 petition. There, he made only the ineffective assistance of counsel claims noted above, as well as a fourth: that his sentencing counsel, Sarah Kunstler, Esq., had been ineffective for failing to "object [to] the over imposing of supervised release and the conditions of supervised release terms." Am. Pet. at 1.

4

On June 15, 2018, the Government filed a letter response. *See* Dkt. 111 ("Resp't Letter"). It argued that Ms. Sternheim and Mr. Kirton had each acted reasonably in response to the disclosure of an eyewitness to one of the robberies; that Mr. Kirton had not failed to follow up on a plea offer, because the plea offer to Kornegay had expired as of Mr. Kirton's appointment as Kornegay's counsel; and that Kornegay's failure to challenge his supervised release term on direct appeal procedurally barred his § 2255 challenges to that term. *See Id.*

## II. Discussion

Kornegay's final iteration of his § 2255 petition asserts his counsels' ineffectiveness in inadequately investigating an eyewitness to one of the robberies, failing to act on an (expired) plea offer, and advocating at sentencing regarding supervised release. The Court addresses these claims in turn, after reviewing the legal standards governing claims of ineffective assistance of counsel.

### A. Applicable Legal Standards Governing Ineffective Assistance Claims

The Sixth Amendment affords a defendant in criminal proceedings the right "to effective assistance from his attorney at all critical stages in the proceedings." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). A defendant claiming ineffective assistance must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). These prongs together amount to a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The Court's "scrutiny of counsel's performance must be highly deferential" because counsel is entitled to "a strong presumption that [his or her] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

"In ruling on a motion under § 2255, the district court is required to hold a hearing [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Gonzalez*, 722 F.3d at 130 (internal citations omitted). Accordingly, for a petitioner filing a motion under § 2255 to obtain a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

### B. Kornegay's Claims as to His Pre-Trial Counsel (Ms. Sternheim)

Kornegay first claims that his pre-trial counsel, Ms. Sternheim, failed to investigate fully whether, as the Government had notified the defense, it had a cellphone store eyewitness who could identify him at trial. Kornegay claims that, had Ms. Sternheim confirmed that such a witness was poised to identify him at trial as a robber, he would have accepted the Government's pretrial plea offer, which contained an advisory guidelines range of 63–78 months imprisonment. This argument is meritless.

A defendant's right to effective assistance of counsel extends to all critical stages of the criminal proceedings, which includes the plea-bargaining process. *See Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014); *Purdy v. United States*, 208 F.3d 41, 44–45 (2d Cir. 2000); *Rodriguez v. United States*, 679 F. App'x 41, 42 (2d Cir. 2017). Under *Strickland*'s first prong, defense counsel is expected to give the client "professional advice on [the] crucial decision of whether to plead guilty," to communicate the terms of a plea offer, and, usually, to "inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy*, 208 F.3d at 45 (internal citations omitted). Defense counsel has a "duty to make reasonable investigations or to make a reasonable

6

decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The "ultimate decision whether to plead guilty," however, "must be made by the defendant." *Purdy*, 208 F.3d at 45.

Under *Strickland*'s second prong, where a defendant claims ineffective assistance in connection with the plea-bargaining process, he must demonstrate that "the outcome of the plea process would have been different with competent advice." *Rodriguez*, 679 F. App'x at 42–43 (internal quotations omitted). This requires the defendant to show, at the threshold, "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been accepted by the defendant and presented to the court . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Rodriguez*, 679 F. App'x at 43 (internal quotations omitted).

Here, Kornegay has failed to satisfy either *Strickland* prong. He has not shown either unreasonable conduct by his counsel, Ms. Sternheim, or that such conduct affected his decision to reject the Government's plea offer. Kornegay admits that the Government on June 19, 2013 notified Royce Russell, Esq., his then-counsel, that an eyewitness had positively identified Kornegay from a photo array. *See* Tr. at 29. Kornegay further admits that Ms. Sternheim, who succeeded Mr. Russell, received the file containing the Government's notification of this identification. *See id.* And he admits that Ms. Sternheim, after taking over his representation, notified him that the Government "'may' have a witness who could identify him as one of the

7

robbery suspects." Mot. to Suppl. at 4. Kornegay nevertheless argues that Ms. Sternheim acted unreasonably by failing further to investigate the eyewitness.

It is unclear what additional concrete step or steps Kornegay expects Ms. Sternheim to have taken to investigate the eyewitness. The Government's June 19, 2013 disclosure to the defense, which redacted the name of the witness, satisfied its pretrial disclosure obligations. Kornegay does not contend otherwise. Tr. at 22–23 ("[I]n terms of notice to the defendant, on June 19th, when the photo array was produced, the name of [Juanetta] Green was redacted out . . . although it was clear from the production that the photograph of the defendant had in fact been identified."). The Government did not provide the identities of its trial witnesses until it produced material pursuant to 18 U.S.C. § 3500 shortly before the trial began. *See* Dkt. 34 ("Jan. 6, 2014 Hr'g Tr.") at 12, 16 ("We would propose to produce a witness list at the same time as 3500 material in this case."). That, in turn, was well after the Government's plea offer to Kornegay had expired (and after Ms. Sternheim, at Kornegay's behest, had been relieved as counsel in favor of Mr. Kirton). With Ms. Sternheim lacking—and the defense not entitled to— the name of the eyewitness in question, Kornegay's notion that she was required to have done more, prior to trial, to discern somehow the identity of the eyewitness, and then vet the strength of the eyewitness' anticipated testimony identifying him, is unpersuasive.

Moreover, as the Government rightly notes, even if Ms. Sternheim had been able to identify the eyewitness by name prior to trial, the eyewitness (Juanetta Green) would not have had any obligation to speak with Ms. Sternheim. There was no reason to expect that Ms. Green would have chosen to do so. In these circumstances, Ms. Sternheim's decision to convey to her

8

client the existence of an eyewitness who might testify at trial without mounting an investigation into the identity of this individual, was reasonable.[3]

The record also shows that Kornegay was not prejudiced by Ms. Sternheim's handling of this matter. Kornegay concedes both that Ms. Sternheim notified him of the existence of a potential trial witness who could identify him as one of the robbers, and that she made Kornegay aware of the Government's plea offer. *See* Mot. to Suppl. at 2, 4; *see also* Dkt. 51 ("Oct. 1, 2013 Hr'g Tr.") at 5. In these circumstances, Kornegay's self-serving claim that he "wanted to take the plea offer" but was inhibited from doing so by inadequate disclosure of the fact of eyewitness testimony against him is, to say the least, unconvincing. Mot. to Suppl. at 2. Kornegay falls far short of showing that, "but for the ineffective advice of counsel," there was a "reasonable probability" that he would have accepted the plea offer. *See Rodriguez*, 679 F. App'x at 43. Rather, all evidence indicates that Kornegay made a knowing decision to spurn the offer in the hope of winning at trial, aware that an eyewitness stood potentially to identify him as among the robbers.

**B.    Kornegay's Claims as to his Trial Counsel (Mr. Kirton)**

Kornegay makes two claims of ineffective assistance with respect to Mr. Kirton, who succeeded Ms. Sternheim and represented Kornegay at trial. Under *Strickland*'s first prong, Kornegay faults Mr. Kirton for failing to "follow up" on a Government plea offer. That claim is quickly dispatched.

Critically, the record reflects that, as of the date that Mr. Kirton took over Kornegay's representation, the outstanding plea offer had expired. The Government conveyed the plea offer

---

[3] Given her secondhand knowledge, Ms. Sternheim was also well within reason not to proclaim to Kornegay certainty that the witness would identify him at trial, stating instead only that the Government had an eyewitness who "may" do so.

9

to Ms. Sternheim on September 18, 2013. The offer tabulated an advisory guidelines range of 63–78 months of imprisonment. Am. Pet. at 11–17. The letter accompanying the plea offer stated that the offer would expire on October 1, 2013. Resp't Letter Ex. A ("Plea Offer") at 1; Am. Pet. at 11–17. The record shows that Mr. Kirton was appointed as Kornegay's CJA counsel the following day: October 2, 2013. Dkt. 11.

Mr. Kirton had no obligation to "follow-up" with Kornegay as to the original offer of 63 to 78 months. By the time Mr. Kirton took over the representation, this offer had expired. And Kornegay does not claim that, at any time, he asked Mr. Kirton to ask the Government to consider reopening the expired offer. On the contrary, Kornegay undisputedly had been notified of the plea offer when it was furnished to Ms. Sternheim on September 18, 2013. Plea Offer at 1. Ms. Sternheim discussed the option of pleading guilty with Kornegay (who had been alerted that an eyewitness was poised to identify him at trial), but Kornegay declined that offer. *See* Resp't Letter at 1; Mot. to Suppl. at 2; Oct. 1, 2013 Hr'g Tr. at 5. Mr. Kirton knew all this: he received the full case file from Ms. Sternheim upon his appointment. Tr. at 27, 29; Oct. 1, 2013 Hr'g Tr. at 6. And the record does not supply any basis to assume that the Government would have agreed to reopen the plea offer had Mr. Kirton asked it to do so.

In these circumstances, under *Strickland*'s second prong, Kornegay cannot coherently claim either substandard advocacy or cognizable prejudice. His claim that Mr. Kirton should have done something different to try to revive the plea offer (and his client's interest in it), is conjectural and opportunistic, and his claim that such efforts would have prevailed is wholly speculative. *See Londono-Tabarez v. United States*, Nos. 07 Civ. 3572 (DAB), 00 Crim. 556 (DAB), 2008 WL 80729, at *5 (S.D.N.Y. Jan. 2, 2008) ("Objectively adequate performance of counsel in the plea bargaining context does not necessarily require 'that the defendant have

10

counsel who recommends that a plea bargain be pursued.'" (quoting *Brown v. Doe*, 2 F.3d 1236, 1246 (2d Cir. 1993)); *see also Gluzman v. United States*, 124 F. Supp. 2d 171, 178 (S.D.N.Y. 2000) ("Where the government does not offer a plea, and where the client insists that she did not participate in the crime, a failure successfully to negotiate a plea does not amount to ineffective assistance of counsel.").

Next, Kornegay, reprising the claim he made in connection with Ms. Sternheim, claims that Mr. Kirton, too, failed to investigate the Government's statement that it had an eyewitness who could identify Kornegay at trial as one of the cellphone store robbers. For the same reasons covered in connection with Ms. Sternheim, this theory of ineffective assistance is baseless. But Kornegay's claim in connection with Kirton is separately defective because it is based on a false statement. Kornegay states that he made an uninformed decision to go to trial "assuming that there was [sic] no witnesses." Am. Pet. at 3.

The record refutes this claim. In fact, in addition to having been notified by Ms. Sternheim that the Government had represented that a store eyewitness might identify him at trial, Kornegay was present when the subject of such an identification came up at a pretrial conference. On October 16, 2013, at a bail hearing soon after being appointed, Mr. Kirton had this exchange with the Court:

> MR. KIRTON: ... [T]here are five separate robberies referenced in the indictment. You now, as far as I know—and of course the government can correct me if I'm wrong—there's been only one identification made of my client by anyone.
>
> . . . .
>
> THE COURT: This line of argument, that the government is only going to offer one person's identification across all five robberies, what's your basis for the representation that the government's case consists of only one identification?

> MR. KIRTON: Well, I think *I already received notice of one identification procedure in which there was a positive tip.*

Dkt. 30 ("Bail Hr'g Tr.") at 10–12 (emphasis added). At the same conference, the Government also referenced the identification: "As Mr. Kirton mentioned, an employee of the store was able to identify Mr. Kornegay from photo array." *Id.* at 17.[4] Kornegay thus knew full well about the identification. With eyes wide open, he chose to go to trial and to attempt to undermine there the identification, rather than asking Mr. Kirton to try to re-open plea discussions.

### C. Kornegay's Claims as to Sentencing

Finally, Kornegay challenges the length and conditions of his supervised release term. Am. Pet. at 1, 33–40; Mot. to Vacate at 3–4. He alternatively casts these claims as ones of ineffective assistance, contending that the attorney appointed to represent him during sentencing, Sarah Kunstler, did not satisfactorily litigate as to supervised release. These arguments fail on procedural grounds.

A defendant who challenges a conviction through a petition under 18 U.S.C. § 2255 may not raise arguments that he could have raised on direct appeal. *See Bousely v. United States*, 523 U.S. 614, 622 (1998). A failure to raise claims available on direct appeal constitutes a procedural default because "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousely*, 523 U.S. at 621; *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (citing *Yick Man Mui v. United States*, 614 F.3d 50, 53–54 (2d Cir. 2010)).

---

[4] To be sure, at a conference on January 13, 2014, the first day of trial, Mr. Kirton—after receiving the § 3500 material for Ms. Green—initially represented that he had not had notice of the use of the photo array in which she had identify Kornegay. *See* Am. Pet. at 19–20. The Government promptly corrected this misimpression, referencing its June 19, 2013 letter. *Id.* at 23.

Here, Kornegay failed to challenge the term and conditions of supervised release either during sentencing or on direct appeal. Sentencing Tr. at 42; *Kornegay*, 641 F. App'x 79. He thus lacks the right to challenge these matters collaterally.

## CONCLUSION

For the foregoing reasons, Kornegay's petition to vacate his sentence pursuant to 28 U.S.C. § 2255 is denied. The Clerk of Court is directed to terminate the motions pending at Dkt. 76, Dkt. 92, and Dkt. 108, and to close this case.

The Court declines to issue a certificate of appealability. Kornegay has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

November 7, 2018
New York, New York