UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | 13 Cr. 428 (PAE) |
| RAYMOND KORNEGAY, | OPINION & ORDER |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Raymond Kornegay seeking his release from Gilmer Federal Correctional Institution ("Gilmer FCI") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk that the COVID-19 pandemic presents for inmates. *See* Dkt. 118 ("Def. Mot."); Dkt. 123 ("Def. Mem."). The Government opposes this request. *See* Dkt. 128 ("Gov't Mem."). For the following reasons, the Court denies this application.

Between December 2009 and March 2010, Kornegay participated in a series of nine robberies of cellphone stores in Manhattan. Gov't Mem. at 1; Dkt. 73 ("Sent. Tr.") at 16, 20. Kornegay and his co-conspirators used wire cutters and knives to separate cell phones and other electronic devices from displays in Manhattan T-Mobile and AT&T stores. Sent. Tr. at 16. When store employees would try to prevent the theft, the robbery crew would threaten force and violence. *Id.* at 16–17. This included making threatening statements to employees and security guards, forcing employees out of the way, and displaying the wire cutters and/or knives they had. *Id.*; Gov't Mem. at 2.

On January 15, 2014, following a three-day trial, Kornegay was convicted of conspiracy to commit Hobbs Act Robbery and three substantive Hobbs Act robberies, in violation of 18

U.S.C. § 1951. Gov't Mem. at 1. On February 15, 2020, in sentencing Kornegay, the Court found that he qualified as a career offender pursuant to U.S.S.G. § 4b1.1(a) due to two prior felony convictions for New York robbery in the second decree. *Id*. at 2–3. The Court sentenced Kornegay to 180 months' imprisonment—below the effective guidelines range of between 210 and 262 months' imprisonment—to be followed by three years of supervised release. *Id.* at 3; Sent. Tr. at 21, 40. Kornegay has been incarcerated since May 8, 2013. Def. Mem. at 2. He has thus served approximately half—seven years and six months—of his stated his prison term and, assuming good behavior, is scheduled for release on May 15, 2026, in approximately five years and six months. *Id.*

On October 5, 2020, the Court received a *pro se* motion from Kornegay seeking early release in light of the COVID-19 pandemic, along with a motion requesting the appointment of CJA counsel. On November 6, 2020, Kornegay's appointed counsel filed a memorandum in support of his motion. Counsel argues that compassionate release is warranted here in light of the current pandemic and Kornegay's diagnosis of Type 2 Diabetes, which poses an increased risk of complications from COVID-19, and because Kornegay has served a substantial portion of his original sentence and has demonstrated a capacity for rehabilitation. *See generally* Def. Mem. Counsel also notes that, in addition to his confirmed diagnosis of Type 2 Diabetes, Kornegay states he also suffers from other dangerous COVID-19 comorbidities, although counsel has not yet been able to confirm this claim. Def. Mem. at 32.

On November 20, 2020, the Government opposed Kornegay's motion. It argues that although Kornegay may present an extraordinary and compelling reason for release given his Type 2 Diabetes diagnosis, which places him at an increased risk of severe illness from COVID-19, the § 3553(a) factors weigh against an early release now. Gov't Mem. at 5 (citing *People*

*With Certain Medical Conditions*, U.S. Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions (2020)).

> Under 18 U.S.C. § 3582(c)(1)(A), a court:
>
> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts. *Ebbers*, 432 F. Supp. 3d at 422–23.

The Second Circuit has recently clarified the regulatory guidance applicable to § 3582(c) applications made by defendants. Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in

U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out various circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons," *id.* § 1B1.13; the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own. Accordingly, although courts, including this one, had heretofore widely treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at *7 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

4

As the Government has conceded, Kornegay's diagnosis of Type 2 Diabetes may well be an extraordinary and compelling reason for release, Gov't Mem. at 5—although that risk is somewhat tempered by his relatively young age of 38.  The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  The crowded nature of federal detention centers in particular presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[1]  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, various courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[2] and the compassionate release of high-risk inmates serving federal sentences.[3]

---

[1] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[2] *See, e.g.*, *United States v. Chandler*, — F. Supp. 3d —, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[3] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heighted vulnerability who had served the

However, even assuming there are extraordinary and compelling reasons for Kornegay's early release, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable" before ordering any such release. 18 U.S.C. § 3582(c)(1)(A). And, in this case, the Court finds that the § 3553(a) factors, viewed collectively, are inconsistent with expediting Kornegay's release from Gilmer FCI by five and a half years, as he requests. Several of those factors—"the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . [and] to provide just punishment for the offense," as well as need "to protect the public from further crimes of the defendant" and thus effect specific deterrence, 18 U.S.C. § 3553(a)—weigh heavily here.

Kornegay's conduct in this case was terrifying and endangered public safety. As the Court reviewed at his sentencing, Kornegay, with two or three other men, would "enter a store, their identities partly concealed under hats and jackets, bearing cutting tools, brandishing wire cutters and/or knives, helping themselves to merchandise and threatening employees who got in their way and muscling others out of the way." Sent. Tr. at 32. Kornegay's actions during each robbery "created a serious risk each time that violence, maybe even deadly violence, would occur . . . . [I]t is really only a matter of good fortune and good judgment by the victims that none of the robberies led to serious injury or even death." *Id.* at 30–31. And, the Court noted,

---

substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 20) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

"[t]he robberies were also deeply wrongful in the way they generated fear. . . . Any incident like that would likely scar or scare an employee or, for that matter, a customer for perhaps a long time." *Id.* at 32.  Finally, the "sheer number of stores that were hit, nine in total, further demonstrates the seriousness of the offense." *Id.*  Thus, the Court reasoned that the serious and violent nature of these actions required a substantial sentence in order "to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  That assessment remains valid.

In addition, the number of robberies—apparently led by Kornegay—demonstrated both the need for specific deterrence and a proclivity towards violence on Kornegay's part, which in turn underscores the public's interest in being protected from future marauding.  *See* Sent. Tr. at 32.  And Kornegay's long criminal history reinforces these arguments for lengthy incarceration.  At sentencing, the Court found he had 15 criminal history category points, independent of his status as a career offender.  *Id.* at 20.  Particularly concerning is that he "committed this spree of nine robberies after having been prosecuted for a very similar prior robbery."  *Id.* at 32.  As the Court noted at sentencing, given his "long record of committing serial and similar robberies, there is every reason to believe that if [Kornegay] were at large again, [Kornegay] would rob again," and thus if any sentence "will get through to [Kornegay] . . . it need[ed] to be materially longer than [his] prior ones," the longest of which was 54 months.  *Id.* at 25, 33.  Furthermore, Kornegay committed these robberies in his late 20s, and thus they could not be chalked up to the "immaturity and recklessness of youth."  *Id.* at 33.  This assessment remains persuasive today.  There remains a powerful in interest in "protect[ing] the public from further crimes" by Kornegay.  The Court does not have confidence that, if released now on account of the pandemic, Kornegay would respect and obey the law.  *See* 18 U.S.C. § 3553(a)(2)(C).

Considering these factors at sentencing, the Court imposed a term of 180 months in prison. That sentence, substantial as it was, fell well below the guidelines range of between 210 and 262 months' imprisonment, and represented a downward variance from the applicable guidelines range. *See* Sent. Tr. at 21, 40. The Court cannot find that a sentence reduction to about half the length of that originally imposed, as Kornegay now seeks, is compatible with the important interests undergirding § 3553(a). In arguing to the contrary, Kornegay contends that his underlying medical conditions and the fact that he will soon be turning 39 will help check his recidivism. Def. Mem. at 12. Kornegay also argues that, although his crimes were serious, as the Court noted at sentencing, the robberies "did not have violence as their objective." *Id.* (quoting Sent. Tr. at 34). Finally, Kornegay stresses that he has shown a capacity for rehabilitation while incarcerated, as demonstrated by his work as an assistant cook and facility maintenance worker, as well as his completion of a number of educational and rehabilitative courses while incarcerated. *Id.* at 12–13. In light of these factors, he contends, a sentence is warranted which is lower than that originally imposed.

The Court commends Kornegay for productively using his time in prison. But none of these arguments supports reducing Kornegay's sentence by more than five years, even with credit for good time. *See* Gov't Mem. at 6. Kornegay was already a grown man when he committed these crimes, yet he still committed violent and deeply anti-social acts. To release Kornegay this early in his term of imprisonment would disserve the interests embodied in the Court's original sentencing determination—most significantly the need for the sentence imposed to reflect the need for just punishment and the need to protect the public from future crimes. For this reason, the Court has denied compassionate release applications by many defendants which were made relatively early in their prison terms—even when a defendant had a health condition

8

indicative of heightened vulnerability to COVID-19.  *See, e.g.*, *United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) (denying compassionate release for a defendant who had served "approximately 54 months of his significantly below-guidelines sentence of 78 months' incarceration"); *see also United States v. Francisco*, No. 19 Cr. 131 (PAE), Dkt. 416 at 1, 5 & n.5 (S.D.N.Y. June 29, 2020) (denying compassionate release where defendant had served only 60% of his sentence); *United States v. Denard Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for defendant diagnosed with asthma where defendant had served only 15 months of a 60-month sentence).

And Kornegay's circumstances diverge from the substantial number of defendants whose compassionate release the Court *has* granted in recent months, in recognition of the changed circumstances presented by COVID-19.  Those defendants had generally served a substantially greater proportion of their sentences, such that the Court found the sentence resulting from a grant of compassionate release consistent with the § 3553(a) factors.  *See, e.g.*, *Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (ordering compassionate release of elderly defendant who had served over half his sentence and suffered from, *inter alia*, HIV, cancer, and hypertension); *Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 at 2–4 (ordering compassionate release a defendant who had served all but seven months of an 88-month sentence); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (same for defendant who had served all but 34 days of a four-month sentence); *Hernandez*, 451 F. Supp. 3d at 305 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for a defendant who had asthma and had served nine years of his 10-year sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE),

9

Dkt. 2523 at 2 (S.D.N.Y. Oct. 9, 2020) (same for a defendant who had served nearly 93 months of his 121-month sentence, and was expected to be released to a halfway house in five months). That is not so here. The Court thus finds that the § 3553(a) factors disfavor Kornegay's release at the midpoint of his sentence.

      Finding that the § 3553(a) factors are not compatible with the reduction of sentence sought, the Court denies Kornegay's motion for compassionate release or reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

      SO ORDERED.

*Paul A. Engelmayer*  
PAUL A. ENGELMAYER  
United States District Judge

Dated: December 3, 2020  
       New York, New York